UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAREN R. MERRITT, JAMES M. CRONAN<br><br>Plaintiffs,<br><br>vs.<br><br>JAMES P. TIERNAN,<br>PENSCO TRUST COMPANY N/K/A<br>PACIFIC PREMIER TRUST CUSTODIAN<br>FBO JAMES P. TIERNAN<br>IRA, ACCOUNT NUMBER 2000750,<br><br>Defendants. | C.A. No. 1:23-cv-00509<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, James M. Cronan ("Cronan") and Karen R. Merritt ("Merritt" and collectively with Cronan, the "Plaintiffs"), bring this action against defendants, James P. Tiernan ("Tiernan") and Pensco Trust Company n/k/a Pacific Premier Trust Custodian FBO James P. Tiernan IRA, Account Number 2000750 ("Pensco"), and allege as follows:

### NATURE OF THE CASE

1. With this action, Plaintiffs allege *inter alia* that Tiernan violated the Massachusetts criminal usury statute, G.L. c. 271, § 49, and engaged in tortious and fraudulent conduct by wrongfully foreclosing on the Rehoboth Property in December 2019 after secretly charging compound, usurious interest on the subject mortgage loan, and then threatening to foreclose on the Norton Property, and reaping a windfall. By engaging in such conduct, Tiernan engaged in unfair and deceptive acts and practices in violation of G. L. c. 93A, §§ 2 and 9.

1

2. Plaintiffs bring this action seeking monetary relief for the extensive financial and emotional harm caused by Tiernan's unfair and deceptive acts and practices in violation of G. L. c. 93A.

3. Plaintiffs have suffered and stand to suffer a devastating loss of the value of the equity in the Rehoboth Property and the Norton Property because of Tiernan's wrongful foreclosure and other wrongful conduct. Additionally, as result of Tiernan's wrongful conduct, they have experienced, and continue to experience, severe emotional distress through the public notice of foreclosure and slander of title, constant uncertainty and anxiety from the threat of foreclosure and eviction, fear of losing their homes and financial ruin, among other damages.

4. Tiernan's acts and omissions described above were undertaken willfully, knowingly, maliciously and in bad faith with the intention of benefiting Tiernan and his businesses at the expense of Plaintiffs.

**PARTIES**

5. Merritt is a citizen of Massachusetts residing at 7 Brayton Woods Dr., Rehoboth, Massachusetts 02769.

6. Cronan is a citizen of Massachusetts residing at 7 Brayton Woods Dr., Rehoboth, Massachusetts 02769.

7. Tiernan is a citizen of Rhode Island residing at 115 Buena Vista Dr., North Kingstown, Rhode Island 02852.

8. Pensco is a Division of Pacific Premier Bank and is a citizen of California with a principal place of business at 17901 Von Karman Avenue, Suite 1200, Irvine, California 92614, and whose registered agent for service of process is CT Corporation System, 330 N Brand Blvd., Suite 700, Glendale, California 91203.

9. At all material times, Pensco has served as custodian for the James P. Tiernan IRA, Account Number 2000750 ("Tiernan IRA"). The Tiernan IRA is not a trust but rather a self-directed custodial individual retirement account owned by Tiernan. At all times, Tiernan owned, managed, directed, and controlled the Tiernan IRA and served as its trustee and thus Tiernan, not the Tiernan IRA, is the real party in interest subject to individual liability as owner, trustee and beneficiary of the Tiernan IRA. The Tiernan IRA is not a separate legal entity apart from Tiernan. Nor is Pensco a fiduciary. Pensco is a purely passive, non-discretionary custodian of the Tiernan IRA subject to Tiernan's control and has no ownership in the Tiernan IRA or its assets. Thus, Pensco is merely a nominal party and not a real party in interest. By this suit, Pensco is placed on notice that any assets held in the custodial Tiernan IRA are subject to the Court's jurisdiction.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because of diversity of citizenship between the parties in interest and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. This Court has personal jurisdiction over Tiernan because he is a Rhode Island citizen residing in Rhode Island.

12. Pensco is merely joined as nominal defendant and thus Plaintiffs need not demonstrate personal or diversity jurisdiction over Pensco because the Court must disregard nominal or formal parties and rest subject matter and personal jurisdiction over the real parties in interest to the controversy, here Plaintiffs and Tiernan. In any event, this Court has diversity jurisdiction because Pensco is a citizen of California and has personal jurisdiction over Pensco because it has sufficient minimum contacts with Rhode Island to provide this Court with jurisdiction, including, on information and belief, its continuous, purposeful and systematic contacts, sales, communications, business contacts, operating interactive websites that allows it to

interact with potential and actual Rhode Island customers and clients on a daily basis, marketing its business to potential and actual Rhode Island customers and clients, serving customers and clients in Rhode Island, and transactions in Rhode Island generally, and, specifically, with Tiernan in Rhode Island. Through such conduct, Pensco purposefully availed itself of the privileges of conducting business in Rhode Island, and when engaging in such conduct, should reasonably have perceived that it would be subjected to this Court's jurisdiction.

13. Venue is proper under 28 U.S.C. § 1391(b) and (c), because Tiernan resides and is subject to personal jurisdiction in this district.

### STATEMENT OF FACTS

14. In 1986, Cronan and Merritt purchased the property located at 91 Oak Street, Norton, Massachusetts 02766 ("Norton Property").

15. In 2001, Merritt and Cronan purchased the property located at 7 Brayton Woods Drive, Rehoboth, Massachusetts 02769 ("Rehoboth Property").

16. In 2009, Merritt and Cronan filed a joint petition for divorce.

17. In 2009, in connection with Merritt and Cronan's divorce and per their separation agreement, Cronan quitclaimed the Rehoboth Property and the Norton Property to Merritt individually.

18. Ralph M. Grieco ("Grieco") is a Massachusetts-licensed accountant.

19. Apponaug Business Services, Inc. ("Apponaug" and collectively with Grieco, "Grieco") is a Rhode Island accounting and business services firm owned by Grieco.

20. Grieco served as Merritt and Cronan's personal and business accountant for many years, serving as personal accountant for Plaintiffs and as accountant for Cronan's businesses, including Classic Display, Inc. and Cronan Realty, LLC. Grieco also provided advice and counsel to Merritt in connection with her divorce from Cronan.

21. In and around 2009, during the Great Financial Crisis, Cronan's businesses, Classic Display, Inc. and Cronan Realty, LLC, were forced into bankruptcy.

22. On February 3, 2010, Classic Display, Inc. filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Rhode Island.

23. On March 2, 2010, Cronan Realty, LLC filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Rhode Island.

24. Cronan Realty, LLC owned the commercial property located at 80 Fountain Street, Pawtucket, Rhode Island 02860 (the "80 Fountain Street Property"), where Classic Display, Inc. operated.

25. Cronan Realty, LLC leased the space to Classic Display, Inc., among other tenants.

26. Cronan Realty, LLC's assets consisted of the 80 Fountain Street Property and the leases.

27. On August 19, 2010, Grieco filed Articles of Incorporation with the Rhode Island Secretary of State for The Classic Group, Inc. with the stated purpose of manufacturing displays.

28. Grieco listed himself and Tiernan as the sole shareholders of The Classic Group, Inc.

29. Grieco introduced Tiernan to Cronan in 2010.

30. On August 20, 2010, the trustee in the Classic Display, Inc. bankruptcy proceeding filed a motion to approve the sale of Classic Display, Inc.'s assets to Grieco and Cronan as "buyers."

31. Soon thereafter, Tiernan was added to the "team" of buyers of Classic Display, Inc.'s assets.

32. The stated purpose of the sale was to allow Grieco, Cronan and Tiernan as the "buyers" to operate and maintain the going concern value of Classic Display, Inc.'s business and to continue to service Classic Display, Inc.'s repeat customers.

33. On September 2, 2010, the Bankruptcy Court approved the sale of Classic Display, Inc.'s assets to Grieco, Cronan and Tiernan for the sum of $30,000.

34. On September 17, 2010, Cronan and Merritt executed two promissory notes to two self-directed IRA's of which Tiernan and Richard J. Fagan ("Fagan") are each the sole holder and beneficiary, in exchange for two mortgage loans, for $311,500 total ($146,500 and $165,000, respectively), with more than 18% annual interest.

35. The promissory notes at issue provide that they were "entered into and made pursuant to the laws of the Commonwealth of Massachusetts and shall in all respects be governed, construed, applied and enforced in accordance with the laws of said Commonwealth of Massachusetts."

36. Grieco introduced Fagan to Cronan.

37. Fagan is related by marriage to Grieco and is a Massachusetts citizen.

38. Since at least 2010, Grieco has provided accounting and financial advisory services to Tiernan and Fagan.

39. The notes were secured by mortgages on both the Rehoboth Property and the Norton Property.

40. The loans matured, at the latest, on March 31, 2012.

41. The notes provide for simple interest.

42. The notes do not provide for the accrual of compound interest.

43. Tiernan and Fagan charged compound interest on the notes.

6

44. The loans constitute "high cost home mortgage loan" transactions under the Massachusetts Predatory Home Loan Practices Act, G. L. c. 183C ("MPHLPA"), and the Regulations promulgated thereunder by the Commissioner of the Division of Banks. G. L. c. 183C, § 2; 2010 209 CMR 32.32(1)(a).

45. Neither Tiernan nor Fagan, nor anyone acting on their behalf, sent Plaintiffs any statements, bills, invoices or the like showing the amount of interest being charged on the loans or the amounts that Tiernan and Fagan claimed were due under the notes.

46. On or about January 1, 2011, Grieco effected the transfer of Cronan's interest in the assets of The Classic Group, Inc. to Tiernan.

47. Cronan received no compensation for the transfer.

48. On or about February 28, 2012, Grieco and Tiernan purchased the 80 Fountain Street property for the sum of $450,000 from the trustee in the Cronan Realty, LLC bankruptcy proceeding.

49. On March 23, 2012, Grieco and Tiernan filed Articles of Organization with the Rhode Island Secretary of State for 80 Fountain Street, LLC for the purpose of holding the 80 Fountain Street property.

50. Grieco and Tiernan listed themselves as the sole members of 80 Fountain Street, LLC.

51. Grieco and Tiernan are business partners and the sole record owners of The Classic Group, Inc. and 80 Fountain Street, LLC.

52. Grieco and Apponaug provide accounting, bookkeeping and other services for The Classic Group, Inc. and 80 Fountain Street, LLC.

53. In April 2017, Grieco and Tiernan claimed that Cronan was an employee of The Classic Group, Inc. and that his employment was terminated.

54. By letter dated July 27, 2017 addressed to the Rehoboth Property, Tiernan and Fagan, through their Massachusetts foreclosure attorney Luke P. Travis, Esq. ("Attorney Travis"), declared Plaintiffs in allegedly default on the loans since September 17, 2011 and claimed that as of June 30, 2017 the outstanding balance allegedly owed on the loans was $851,983.14, and stated their intent to foreclose on the Rehoboth Property.

55. By letter dated October 17, 2018 addressed to the Rehoboth Property, Tiernan and Fagan, through Attorney Travis, again declared Plaintiffs in allegedly default since September 17, 2011 and claimed that as of September 30, 2018 the outstanding balance allegedly owed on the loans was $1,011,572.00, plus an additional amount of $120,635.44 for real estate taxes, homeowners insurance and legal fees, and stated their intent to foreclose on the Rehoboth Property.

56. Attorney Travis attached to his October 17, 2018 letter a summary of the amounts of principal and interest being charged and allegedly owed, along with the various other taxes and fees claimed owed.

57. With the October 17, 2018 letter, Tiernan and Fagan, through Attorney Travis, for the first time indicated that they were charging compound interest on overdue interest rather than simple annual interest as provided in the promissory notes.

58. On March 11, 2019, Cronan filed a lawsuit in Rhode Island state court, *James M. Cronan v. Ralph M. Grieco, et al.*, C.A. No. PC-2019-3655, against Grieco, Tiernan, The Classic Group, Inc. and 80 Fountain Street, LLC, alleging that Grieco and Tiernan wrongly ousted Cronan from a partnership between them dating back to 2010 (the "Rhode Island Action").

59. The Rhode Island Action did not involve claims regarding the loan transactions with Tiernan and Fagan or the foreclosure of the Rehoboth Property or the Norton Property.

60. Tiernan and Grieco denied the existence of any partnership between them and Cronan.

61. On June 12, 2019, Grieco and Apponaug filed a lawsuit in Massachusetts state court, *Ralph M. Grieco et al. v. James M. Cronan et al*, C.A. No. 1973CV00649, against Cronan and Merritt seeking several declarations concerning his liability under the MPHLPA in relation to the loan transactions (the "Grieco Action").

62. In December 2019, Cronan and Merritt asserted counterclaims against Grieco and Apponaug in the Greico Action alleging *inter alia* that, unbeknownst to them, Grieco and Apponaug violated the Massachusetts criminal usury statute, G.L. c. 271, § 49, and aided and abetted Tiernan and Fagan's tortious and fraudulent conduct and usury in connection with the calculation of interest on the subject promissory notes and the wrongful foreclosure sale of the Rehoboth Property in violation of G. L. c. 93A and their fiduciary duties.

63. On September 9, 2019, Fagan filed a lawsuit in Massachusetts state court, which was then removed to the United States District Court for the District of Massachusetts, *PENSCO Trust Company Custodian FBO Richard J. Fagan v. Constant S. Poholek, Jr., Esq.*, C.A. No. 1:19-cv-12000-RGS, against Merritt's former bankruptcy attorney, Constant S. Poholek, Jr., Esq. ("Attorney Poholek"), alleging that Attorney Poholek assisted Merritt in filing a Ch. 13 bankruptcy filing that included false and misleading statements filed solely to defeat a foreclosure sale on the Rehoboth Property ("Attorney Poholek Action").

64. On July 24, 2020, Tiernan joined in the Attorney Poholek Action.

65. Attorney Poholek denied any liability and filed an answer and counterclaims against Tiernan and Fagan in response.

66. In an October 31, 2019 letter from Attorney Travis addressed to the Rehoboth Property, Tiernan and Fagan notified Merritt of their intent to conduct a non-judicial foreclosure sale of the Rehoboth Property on December 3, 2019.

67. On December 3, 2019, the foreclosure sale was held at the Rehoboth Property.

68. An entity named L&S Realty, LLC ("L&S Realty") was the successful bidder at the December 3, 2019 foreclosure sale, bidding an auction price of $550,000.00.

69. Upon information and belief, L&S Realty did not actually close on the foreclosure sale and accept delivery of the deed—and thus take legal title to the Rehoboth Property—until May 2019.

70. In a December 5, 2019 letter from Attorney Travis addressed to the Rehoboth Property, Tiernan and Fagan again declared Merritt in allegedly default of the loans since September 17, 2011, increased the amount they sought to recover to $1,276,369.80, and stated their intent to foreclose on the Norton Property.

71. Neither Tiernan and Fagan nor their attorneys ever provided Merritt or Cronan an itemized accounting of the disposition of the foreclosure sale proceeds.

72. On May 29, 2020, the Registrar for the Bristol Count (Northern Division) Registry of Deeds recorded the purported Foreclosure Deed conveying the Rehoboth Property to L&S Realty at Book 25985, Page 6.

73. On August 17, 2020, L&S Realty filed a declaratory judgment action in the Massachusetts Housing Court, *L&S Realty, LLC v. James M Cronan et al.*, C.A. No.

20H83CV00167TA, in which L&S Realty asked the Housing Court to declare that it held title had a superior right to possession of the Rehoboth Property as a result of the foreclosure sale.

74. On February 12, 2021, L&S Realty filed a summary process complaint in a separate action in the Massachusetts Housing Court, *L&S Realty, LLC v. James M Cronan et al.*, C.A. No. 21H83SP00443TA, seeking to evict Plaintiffs based on its alleged title and right to possession (collectively with C.A. No. 20H83CV00167TA the "Housing Court Action").

75. In September 2021, the court issued its judgment and decision in the Housing Court Action granting L&S Realty summary judgment on its claim for possession of the Rehoboth Property.

76. By charging compound interest, the interest rates charged by Tiernan and Fagan went well above both the rates called for in the notes themselves and the maximum 20% legal amount and thus violate the criminal usury statute, G.L. c. 271, § 49(a).

77. The interest rates that Tiernan and Fagan charged ranged from 18.23% on the low end all the way up to 55.77% in September 2020.

78. In a June 22, 2021 letter from Tiernan and Fagan's new Massachusetts foreclosure attorney, David E. Silverman, Esq. ("Attorney Silverman") addressed to the Rehoboth Property, following their receipt of the $550,000 from L&S Realty, Tiernan and Fagan again declared Merritt and Cronan in default of the mortgage loans, stated that they now sought to recover the amount of $475,504.92, and stated their intent to foreclose on the Norton Property.

79. Tiernan and Fagan wrongly charged compound interest that was not allowed under the notes and overcharged Merritt and Cronan as a result.

80. The amounts stated in Attorney Travis' July 27, 2017, October 17, 2018 and December 5, 2019 letters incorrectly stated the amounts actually owed on the notes and needed to cure default.

81. The amounts stated in Attorney Silverman's June 22, 2021 letter incorrectly stated the amounts actually owed on the notes and needed to cure default.

82. Tiernan and Fagan overcharged Merritt and Cronan because they charged compound interest when the notes called for the payment of simple interest.

83. With knowledge of their contents, Tiernan and/or his agents maintained possession of loan documents and other instruments used to calculate and record the interest that Tiernan charged Plaintiffs and the alleged payoff amounts stated in Attorney Travis' July 27, 2017, October 17, 2018 and December 5, 2019 letters and in Attorney Silverman's June 22, 2021 letter.

84. At and around the time of the December 3, 2019 foreclosure sale of the Rehoboth Property and thereafter, Tiernan owed money to The Classic Group, Inc. and 80 Fountain Street, LLC.

85. At and around the time of the December 3, 2019 foreclosure sale and thereafter, The Classic Group, Inc. and 80 Fountain Street, LLC owed money to Grieco, Apponaug, and Grieco's wife.

86. Grieco and Tiernan used funds of The Classic Group, Inc. and 80 Fountain Street, LLC to pay their personal expenses, including legal expenses.

87. Tiernan used money he received from the foreclosure sale of the Rehoboth Property to repay money he owed to 80 Fountain Street, LLC.

88. In May 2022, the court issued judgment in the Attorney Poholek Action dismissing Tiernan and Fagan's claims and Attorney Poholek's counterclaims.

89. Tiernan and Fagan's mortgage remains on the Norton Property.

90. Tiernan knowingly acted in a business context and with a profit-seeking motive in connection with the subject loan transactions over the years and specifically in connection with the wrongful foreclosure of the Rehoboth Property and the threatened foreclosure of Norton Property.

91. Tiernan conducted the actual and threatened foreclosures of the Rehoboth Property and Norton Property as retribution for his dispute with Cronan and for Cronan bringing the Rhode Island Action and to profit and benefit from the money received by Tiernan and in turn by his businesses, The Classic Group, Inc. and 80 Fountain Street, LLC.

92. As a result of Tiernan's unfair and deceptive acts and practices and wrongful foreclosure of the Rehoboth Property and threatened foreclosure of the Norton Property, Plaintiffs have suffered or stand to suffer a devastating loss of the value of the equity in the Rehoboth Property and Norton Property and their legal interest in these properties as well as other money and property.

93. Additionally, as a direct and proximate result of Tiernan's conduct, Plaintiffs have experienced, and continue to experience, fright, humiliation, shame, worry, depression and severe mental pain, suffering and emotional distress, invasion of privacy through the public notice of foreclosure and slander of title, constant uncertainty and anxiety from the threat of foreclosure, fear of losing their home and financial ruin, among other damages.

94. Plaintiffs have also incurred, and continue to incur, costs, expenses and attorneys' fees in the instant action, in other legal actions and in attempting to mitigate and undo the wrongful mortgage loans and foreclosure attempts and save their homes, which Plaintiffs are entitled to recover as damages.

95. Tiernan's acts and omissions described above were undertaken willfully, knowingly, maliciously and in bad faith with the intention of benefitting themselves and Tiernan's businesses, The Classic Group, Inc. and 80 Fountain Street, LLC at the expense of Plaintiffs.

## COUNT I
## Violation of G. L. c. 93A, §§ 2, 9

96. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

97. At all relevant times hereto, Tiernan was engaged in trade or commerce with respect to the loan transactions at issue in this case and the foreclosure of the Rehoboth Property and the threatened foreclosure of Norton Property.

98. As described herein, Tiernan engaged in unfair and deceptive acts or practices within the meaning of G.L. c. 93A, §§ 2 and 9 and 940 C.M.R. § 3.16(1), (3) by: (i) charging, taking and receiving, directly or indirectly, compound and usurious interest in violation of G.L. c. 271, § 49(a) and Massachusetts common law; (ii) wrongfully foreclosing on the Rehoboth Property and threatening to foreclose on the Norton Property; and (iii) knowingly maintaining possession of the loan documents and other instruments used to record the illegal transactions in violation of G.L. c. 271, § 49(b).

99. Tiernan's actions described herein were performed willfully and knowingly.

100. Tiernan's unfair and deceptive acts or practices described herein were directed at Plaintiffs in Massachusetts, caused harm to Plaintiffs in Massachusetts, and involved conduct, representations to and communications with Plaintiffs and the Rehoboth Property in Massachusetts, and therefore occurred primarily and substantially in Massachusetts.

101. As a proximate and legal result of Tiernan's unfair and deceptive acts or practices, Plaintiffs have been damaged and continue to be damaged.

102. On October 30, 2023, Plaintiffs, through their attorney, mailed to defendant Tiernan, via certified mail, return receipt requested, postage prepaid, a written demand letter identifying the claimants and reasonably describing the unfair acts and practices relied upon and the injuries suffered. Tiernan received the demand letter on November 2, 2023.

103. On October 30, 2023, Plaintiffs, through their attorney, mailed to defendant Pensco c/o its registered agent, via certified mail, return receipt requested, postage prepaid, a written demand letter identifying the claimants and reasonably describing the unfair acts and practices relied upon and the injuries suffered. Pensco received the demand letter on November 6, 2023.

104. On October 30, 2023, Plaintiffs, through their attorney, mailed to defendant Pensco c/o its legal department at its principal place of business, via certified mail, return receipt requested, postage prepaid, a written demand letter identifying the claimants and reasonably describing the unfair acts and practices relied upon and the injuries suffered. Pensco received the demand letter on November 6, 2023.

105. The above-referenced demand letters were mailed more than 30 days prior to filing this action.

106. The statutory demand letter requirements of G.L. c. 93A, § 9(3) do not apply here because Tiernan (nor Pensco) does not maintain a place of business and/or does not keep assets within Massachusetts.

107. In the event the statutory demand letter requirements of G.L. c. 93A, § 9(3) do apply, then Plaintiffs have complied with them.

108. Tiernan failed to comply with the statutory requirements of G.L. c. 93A(3).

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor on each Count and against Tiernan and grant the following relief:

A. Award Plaintiffs compensatory, consequential and punitive damages;

B. Award Plaintiffs costs, attorneys' fees, expert witness fees and treble damages pursuant to G.L. c. 93A, § 9(3);

C. Award Plaintiffs prejudgment interest according to proof;

D. Award Plaintiffs their costs, expenses, attorneys' fees and expert witness fees; and

E. Award such other and further relief, including equitable relief, as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

Respectfully submitted,

Plaintiffs,
KAREN R. MERRITT, JAMES M. CRONAN

By Their attorneys,

/s/ Eric E. Renner
Eric E. Renner (#7481)
Duffy & Sweeney, LTD
321 South Main Street, Suite 400
Providence, RI  02903
Phone: 401-457-1803
Fax: 401-457-0701
erenner@duffysweeney.com

Date:  December 1, 2023